No. 25-30349

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

KEYNON FRAZIER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Louisiana (Shreveport)
USDC No. 5:24-cr-00093-SMH-MLH

# BRIEF OF APPELLANT KEYNON FRAZIER

RACHEL I. CONNER, La. Bar No. 29726
Law Office of Rachel I. Conner
3015 Magazine Street
New Orleans, LA 70115
(504) 581-9083
rachel@connerdefense.com

# CERTIFICATE OF INTERESTED PERSONS

*United States v. Keynon Frazier*

No. 25-30349

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. *Defendant-Appellant:* Keynon Frazier;

2. *Counsel for Plaintiff-Appellee:* Assistant United States Attorneys J. Aaron Crawford; Cheyenne Wilson; Camille Domingue;

3. *Counsel for Defendant-Appellant:* Rachel I. Conner; Alex Washington.

   *Former Counsel for Defendant-Appellant*: Caroline Green; Joshua Williams; Joseph Woodley; J. Ransdell Keene.

New Orleans, Louisiana this 11th day of February, 2026.

/s/ Rachel I. Conner
Rachel I. Conner, La. Bar No. 29726

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests oral argument pursuant to Federal Rule of Appellate Procedure 34(a) and Fifth Circuit Rule 34.2. This appeal presents substantial questions of law regarding the proper application of controlling precedent and raises important issues that would benefit from oral presentation and the opportunity to answer the Court's questions.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................ iii

TABLE OF AUTHORITIES..........................................................................v

STATEMENT OF JURISDICTION ............................................................1

STATEMENT OF THE ISSUES ................................................................2

STATEMENT OF THE CASE ...................................................................2

(i) Course of the Proceedings and Disposition in the Court Below. ................2

(i) Statement of Relevant Facts ..........................................................5

SUMMARY OF ARGUMENT....................................................................8

ARGUMENT ..........................................................................................8

I.The district court erred when it denied Mr. Frazier's Motion to Suppress.............8

CONCLUSION .......................................................................................21

CERTIFICATE OF SERVICE...................................................................23

CERTIFICATE OF COMPLIANCE ...........................................................24

# TABLE OF AUTHORITIES

Boykin v. Alabama, 395 U.S. 238, 242–44 (1969) ...................................... 7
District of Columbia v. Heller, 554 U.S. 570 (2008) ............................. 8, 18
Florida v. Royer, 460 U.S. 491 (1983) ....................................................... 10
Hogue v. Superintendent of Green Haven Corr. Facility,
2020 WL 4260995 (E.D.N.Y. July 24, 2020) …………………….............. ___
Johnson v. Eisentrager, 339 U.S. 763 (1950) ............................................ 18
Jones v. United States, 357 U.S. 493 (1958) ................................................ 9
Konigsberg v. State Bar of California, 366 U.S. 36 (1961) ……................ 18
New York State Rifle & Pistol Ass'n v. Bruen,
597 U.S. 1 (2022) .............................................................................. 8, 13, 18
Ohio v. Robinette, 519 U.S. 33 (1996) ...................................................... 12
Puckett v. United States, 556 U.S. 129 (2009) ......................................... 8, 9
Range v. Attorney General, 124 F.4th 218 (3d Cir. 2024) ......................... 13
Rehaif v. United States, 139 S. Ct. 2191 (2019) ........................................ 18
Terry v. Ohio, 392 U.S. 1 (1968) ............................................................... 10

United States v. Breeland, 53 F.3d 100 (5th Cir. 1995) ............................ 11
United States v. Brigham, 382 F.3d 500 (5th Cir. 2004) .......................... 12
United States v. Cavitt, 550 F.3d 430 (5th Cir. 2008) .............................. 14
United States v. Chavez-Villarreal, 3 F.3d 124 (5th Cir. 1993) ................ 19
United States v. Cockerham, 162 F.4th 500 (5th Cir. 2025) .............. 13, 18
United States v. Cuevas-Andrade, 232 F.3d 440 (5th Cir. 2000) .............. 7
United States v. Daniels, 77 F.4th 337 (5th Cir. 2023) ............................ 13
United States v. Diaz, 116 F.4th 458 (5th Cir. 2024) ......................... 12, 13
United States v. Dominguez Benitez, 542 U.S. 74 (2004) ....................... 8
United States v. Dortch, 199 F.3d 193 (5th Cir. 1999) ............................ 14
United States v. Estrada, 459 F.3d 627 (5th Cir. 2006) .......................... 14
United States v. Fulwiler, 2023 WL 7118748 (5th Cir. 2023) ………..….. 13
United States v. Garcia-Vargas, 428 F. App'x 386 (5th Cir. 2011) ……. 11
United States v. Girod, 646 F.3d 304 (5th Cir. 2011) ............................ 18

United States v. Gonzalez, 328 F.3d 755 (5th Cir. 2003) ....................... 9
United States v. Guidry, 406 F.3d 314 (5th Cir. 2005) .................... 27, 28
United States v. Howard, 766 F.3d 414 (5th Cir. 2014) .......................... 8
United States v. Hunt, 123 F.4th 697 (4th Cir. 2024) ........................... 13
United States v. Huntsberry, 956 F.3d 270 (5th Cir. 2020) ................... 18
United States v. Ibarra-Sanchez, 199 F.3d 753 (5th Cir. 1999) ……..... 11
United States v. Jacquinot, 258 F.3d 423 (5th Cir. 2001) ....................... 9
United States v. Jenson, 462 F.3d 399 (5th Cir. 2006) ......................... 14
United States v. Jones, 484 F.3d 783 (5th Cir. 2007) ......................... ___
United States v. Kuban, 94 F.3d 971 (5th Cir. 1996) ......................... ___
United States v. Lujano-Perez, 274 F.3d 219 (5th Cir. 2001) ………..... 7
United States v. Magana, 544 F. Supp. 2d 560 (W.D. Tex. 2008) …... 12
United States v. Martinez-Salazar, 528 U.S. 304 (2000) ................... ___
United States v. McKnight, 953 F.2d 898 (5th Cir. 1992) ................. ___
United States v. Meza, 701 F.3d 411 (5th Cir. 2012) ......................... ___
United States v. Mitchell, 160 F.4th 169 (5th Cir. 2025) ...................... 13
United States v. Myers, 104 F.3d 76 (5th Cir. 1997) ......................... ___
United States v. Orozco, 191 F.3d 578 (5th Cir. 1999) ......................... 9
United States v. Patino, 758 F. Supp. 3d 664 (2024) ........................... 13
United States v. Pierson, 139 F.3d 501 (5th Cir. 1998) ................... ___
United States v. Rahimi, 602 U.S. 680 (2024) ............................. 13, 18
United States v. Ramon, 86 F. Supp. 2d 665 (W.D. Tex. 2000) ..... 9, 17
United States v. Reyes, 300 F.3d 555 (5th Cir. 2002) .......................... 7
United States v. Rice, 719 F. Supp. 3d 618 (W.D. Tex. 2024) ……... 13
United States v. Rivas, 85 F.3d 193 (5th Cir. 1996) ............................ 7
United States v. Rounds, 749 F.3d 326 (5th Cir. 2014) ....................... 9
United States v. Santiago, 410 F.3d 193 (5th Cir. 2005) ...................... 9
United States v. Schnur, 132 F.4th 863 (2025) .................................. 14
United States v. Seekins, 2022 WL 3644185 (5th Cir. 2022) ………..... 17
United States v. Shabazz, 993 F.2d 431 (5th Cir. 1993) ...................... 11
United States v. Simpson, 152 F.4th 611 (2025) ................................ 14
United States v. Valadez, 267 F.3d 395 (5th Cir. 2001) ...................... 10

United States v. Williams, 113 F.4th 637 (6th Cir. 2024) ........... 13
United States v. Wise, 877 F.3d 209 (5th Cir. 2017) ................... 18
United States v. Zavala, 459 F. App'x 429 (5th Cir. 2012) …..... 20
Vincent v. Bondi, 127 F.4th 1263 (10th Cir. 2025) ..................... 13

## STATUTES

18 U.S.C. § 921(a)(20) ............................................................ 18
18 U.S.C. § 922(g)(1) ................................................ 2, 8, 12, 18
18 U.S.C. § 3553(a) ................................................................ 10
18 U.S.C. § 3742 ....................................................................... 1
21 U.S.C. § 841(a)(1) ................................................................ 2
28 U.S.C. § 1291 ....................................................................... 1
La. Rev. Stat. § 14:60 ............................................................. 14
La. Rev. Stat. § 14:64.4 ........................................................... 14

## RULES

Fed. R. App. P. 4(b) ............................................................. 1
Fed. R. App. P. 25 ................................................................. 23
Fed. R. App. P. 32 ................................................................. 24
Fed. R. Crim. P. 11 ................................................... 5, 6, 9, 10
Fed. R. Crim. P. 32 ................................................................ 12
5th Cir. R. 28.2.1 .................................................................... ii
5th Cir. R. 25.2.5 .................................................................. 23

## STATEMENT OF JURISDICTION

This is an appeal from a final judgment in a criminal proceeding. Jurisdiction of this Court is invoked under 28 U.S.C. §1291, as an appeal from a final judgment of conviction and sentence in the United States District Court for the Western District of Louisiana and under 18 U.S.C. §3742, as an appeal of a sentence imposed under the Sentencing Reform Act of 1984.

Notice of appeal was timely filed in accordance with Rule 4(b) of the Federal Rules of Appellate Procedure. ROA.167.

## STATEMENT OF THE ISSUES

1. The district court erred when it denied Mr. Frazier's Motion to Quash the Indictment.

2. The district court erred when it denied Mr. Frazier's Rule 29 motion for acquittal challenging the sufficiency of the evidence.

3. The district court abused its discretion when it refused to give requested jury instruction on "mere presence."

4. The district court erred when it denied defense requested voir dire questions about gun ownership and attitudes toward guns.

5. The district court clearly erred when it applied a 2-level sentencing enhancement for obstruction of justice under USSG § 3C1.1.

6. The trial court clearly erred when it applied a 2-level sentencing enhancement for obstruction of justice under USSG §3C1.2.

## STATEMENT OF THE CASE

### (i) Course of the Proceedings and Disposition in the Court Below.

On April 24, 2024, a federal grand jury returned an Indictment charging Keynon Frazier with one count with Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1).

The following day, on April 25, 2024, Mr. Frazier had his Initial Appearance and Arraignment before Magistrate Judge Hornsby. Mr. Frazier stipulated to detention.

On May 16, 2024, the Court held a detention hearing at which the case agent and two witnesses testified. On May 21, 2024, Magistrate Hornsby held that no conditions could assure the community's safety and Mr. Frazier's appearance and ordered Mr. Frazier detained.

On August 13, 2024, counsel for Keynon Frazier filed a Motion to Dismiss the Indictment. Rec.Doc.35. The motion argued that indictment should be dismissed on two grounds: First, that the Felon in Possession of a Firearm statute, 18 U.S.C. § 922(g), as applied to Keynon Frazier, was an unconstitutional infringement of Mr. Frazier's rights under the Second Amendment of the U.S. Constitution; and secondly, that the Commerce Clause did not authorize Congress to criminalize the possession of firearms based on their potential historical movement in interstate commerce.

On December 12, 2024, Judge S. Maurice Hicks, Jr. issued an Order denying Keynon Frazier's Motion to Dismiss the Indictment. Rec.Doc. 52. The Court held that:

> Frazier's prior convictions are felonies and would have historically led to capital punishment or estate forfeiture. Thus, disarming Frazier fits within the tradition of serious and permanent punishment. Additionally, the crimes Frazier committed are consistent with the Nation's historical tradition of firearm regulation. Frazier's permanent disbarment of firearms is justified based upon serious crimes showing he may pose a risk of violence, upset the public order, or be a danger to

> the public. Because there is a sufficient historical analogue, Frazier's indictment under Section 922(g)(1) is constitutional as applied to him. ROA.116.

The Court held that Frazier's Commerce Clause argument was foreclosed by binding Fifth Circuit precedent, *citing U.S. v. Seekins*.

Prior to trial, the Government disclosed that Officer D'Andre Jackson, had previously been prosecuted by the United States Attorney's Office for civil rights issues. Officer Jackson went to trial in *U.S. v. Trevion Brooks, et al.,* (21-cr-00279-01/03) and was found not guilty in 2023. Officer Jackson had state charges from the same conduct that were dismissed in 2023 as well. Officer Jackson was fired from the Shreveport Police Department when he was indicted but was re-instated after his federal and state charges were resolved. The Government submitted that Officer Jackson's arrest and trial were not relevant to the case and should be excluded from being mentioned at trial.

On January 3, 2025, the parties filed a Joint Agreement stipulating that 1) Keynon Frazier was a convicted felon prohibited from possessing a firearm; 2) that he knew he was a felon and prohibited from possessing a firearm at the time of his April 15, 2024 arrest; 3) that the two Glock pistols found in the vehicle meet the definition of firearms; and 4) that they were manufactured in Austria and had moved in or affected interstate commerce.

On January 8, 2025, the parties filed the following Joint Neutral Statement to be read to the jury:

> In this case, the government will present a case in which they believe the evidence will show that the Defendant, Keynon Frazier a.k.a "Green Eyez," in the early morning hours on or about April 15 , 2024, was involved in a wreck in downtown Shreveport shortly after a Shreveport Police Department officer attempted to make a traffic stop on him. Frazier was the sole occupant and was taken into custody after the wreck. Shreveport Police Department officers examined the vehicle afterwards and found two handguns located in the front passenger floorboard. The government further believes the evidence will show that Keynon Frazier possessed the firearms. RecDoc.61.

On January 13, 2025, the parties agreed to amend the January 8, 2025 stipulation to include that ammunition was also located in the vehicle. ROA.227.

A jury was selected and sworn to the try the case. The government and defense made opening statements and the government called its first witnesses. ROA.135.

On January 14, 2025, the government called additional witnesses and rested its case. ROA.137. The defense called a witness and Keynon Frazier testified. The defense rested and the evidence closed.

On January 15, 2025, the government and defense gave closing statements, the jury was instructed, and began deliberations at 10:00 a.m. ROA.139. At 12:35 p.m., the jury returned its verdict, finding Keynon Frazier guilty of Count 1.

A sentencing hearing was held on May 22, 2025. The Court overruled the defense's objections, adopted the PSR's factual findings, and committed the defendant to the Bureau of Prisons for 78 months as to Count 1, imposed a $25,000 fine and a $100 special assessment, and ordered three years of supervised release. Rec.Doc.91. Pursuant to U.S.S.G. §5G1.3(c), the Court ordered the federal sentence to run concurrently with any anticipated state sentences in First Judicial District Court, Shreveport, Louisiana, Docket Nos. 401400 and 401931.

A Notice of Appeal was filed June 9, 2025. ROA.167.

This timely filed Brief on Appeal follows.

**(i) Statement of Relevant Facts**

On April 15, 2024 at approximately 3:12 a.m., Shreveport Police Department patrol officer Deandre Jackson observed a red Chrysler 300 leaving Ant's Urban Lounge. The Chrysler's taillights were not illuminated, and Officer Jackson attempted to stop the vehicle. The Chrysler sped up, hit a utility pole, causing the airbags to deploy, and ultimately crashed into a white F-150 pick up truck. Mr. Frazier was taken into custody and read his *Miranda* rights. When Officer Jackson opened the passenger side door of the Chrysler, he observed two Glock firearms laying on the passenger side floorboard. One of the handguns had a spent casing partially jammed, "stove piped," in the chamber.

At trial, the government and defense stipulated that Keynon Frazier "is a convicted felon in the State of Louisiana and is prohibited from possessing a firearm," that he "knew he was a felon and was prohibited from possessing a firearm at the time of his arrest on April 15, 2024," that the Glock 17 and Glock 45 pistols found in the vehicle in which he was the driver "meet the definition of a firearm," that the firearms were "manufactured in Austria and had moved/affected in interstate commerce," and that the Glock 17 was traced to an April 10, 2017 purchase by Brandon George and the Glock 45 was traced to a January 14, 2023 purchase by Haley Dandra Barnes, Brandon George's former girlfriend. ROA.510.

ATF Special Agent Brett Lee testified both handguns were test-fired by SPD and manufactured in Austria, thus traveled in interstate commerce, and described one firearm showing a stovepipe/failure-to-eject.

The officers did not test the firearms or shell casings for fingerprints or DNA. ROA.321. The officers did not test Mr. Frazier, his clothing or the hole in the windshield for gunshot residue.ROA.349. The bullets were not tested for fingerprints or DNA. ROA.360. Officer Fyffe testified that a firearm will feel hot after it is fired. ROA. 352. When he retrieved the Glock 45, it was cold. ROA.361.

A small hole was observed in the upper right windshield in front of the driver's side of the vehicle. ATF forensic chemist Tiffany Rodriguez was qualified as an

expert in forensic chemistry and trace evidence and opined based on a review of digital images that a high-velocity projectile originated inside the vehicle and exited to the exterior, producing coning on the outside.

Brandon George testified that he had known Keynon Frazier for over ten years and had been working as security for him for the previous year. George testified that he himself was not a felon, and that he carried two firearms to the Ants nightclub on April 15, 2024. George testified that he rode with Frazier to Ants nightclub in the red Chrysler 300 on the night of April 15, 2024. George sat in the passenger seat had both firearms with him. ROA.493. When they arrived at the club, George placed both firearms under the passenger seat because firearms were not permitted in the club. ROA.495. Frazier and George left the club at approximately 3:00 a.m. in a hurry. Frazier drove the red Chrysler, followed by a vehicle driven by Frazier's brother, and George drove his friend, who had become intoxicated, behind them in a convoy. ROA. 496.

George testified that, after the crash, he approached the officers on the scene and told them he was Frazier's security and wanted to retrieve his guns and his jacket from the Chrysler, but was not permitted to. ROA.501.

Keynon Frazier testified that he was driving a friend's red Chrysler on April 15, 2024 and that he and Brandon George, who worked security for him, had made

several stops before going to Ants nightclub. They had several drinks in the club, but left in a hurry because someone working at the club told Frazier that people were waiting for him outside and looking at the car. ROA.525. Frazier drove the Chrysler, his brother followed, and Brandon George was in the last car with a friend. They were driving to Brandon George's apartment. Frazier lost control of the car as it fishtailed and he hit a light pole before crashing into the pick up truck. ROA.528.

Officer Webster spoke with Brandon George on the scene, who identified himself as Frazier's representative and told him that the guns belonged to him. ROA.382.

During deliberations, the jury wrote six notes, requesting additional instructions about possession, asking for the audio of the jail call to be played without the transcript, and requesting to know what the Constitution stated about possession of a firearm.

Following deliberations, the jury returned a verdict convicting Keynon Frazier of one count of violating 18 U.S.C. § 922(g)(1).

## SUMMARY OF ARGUMENT

This appeal challenges both the constitutionality of 18 U.S.C. § 922(g)(1) as applied to Mr. Frazier and the fundamental fairness of the proceedings that produced his conviction and sentence. Under *Bruen* and *Rahimi*, once the Second

Amendment's plain text covers the conduct at issue, the Government must demonstrate that the challenged regulation is consistent with the Nation's historical tradition of firearm regulation. The Government failed to identify a relevant historical analogue justifying Mr. Frazier's permanent disarmament based on his prior convictions and the circumstances of this case. Independently, the evidence was insufficient to establish that Mr. Frazier knowingly possessed the firearms found in the vehicle. No forensic evidence linked him to the weapons, another individual claimed ownership, and mere presence and proximity are insufficient to prove constructive possession. The district court therefore erred in denying the motion to dismiss and the Rule 29 motion for acquittal.

The district court further committed reversible error by denying defense-requested jury instructions on constructive possession, joint and sole possession, knowledge, and mere proximity; restricting voir dire; altering a mutual stipulation at the Government's request; permitting publication of a rolling jail-call transcript; limiting impeachment and cross-examination; and providing inadequate responses to jury questions. At sentencing, the court imposed unsupported enhancements, miscalculated criminal history, relied on trial evidence without independent findings, denied a variance despite mitigating factors, and imposed a substantial fine based on speculative future income. For these reasons, Mr. Frazier respectfully

requests that this Court reverse his conviction, vacate his sentence, and remand for dismissal of the indictment or, at minimum, a new trial and resentencing.

## ARGUMENT

### I. The district court erred when it denied Mr. Frazier's Motion to Quash the Indictment.

#### *A. Standard of Review*

Because Mr. Frazier preserved his challenge to § 922(g)(1) by raising it in his motion to dismiss the indictment, this Court reviews the issue *de novo*. *See United States v. Howard*, 766 F.3d 414, 419 (5th Cir. 2014).

#### *B. Second Amendment Argument*

The Second Amendment to the United States Constitution provides that "[a] well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II.

In *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), the Supreme Court held that a Washington D.C. law that prohibited possession of handguns in the home was unconstitutional. The Court interpreted the language of the Second Amendment and determined that its drafters intended for it to protect "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 635, 128 S.Ct. 2783. Thus, D.C.'s categorical prohibition

did not pass constitutional muster. *Id.* at 628–29, 128 S.Ct. 2783. However, Justice Scalia wrote, the right to bear arms is not unlimited: it is not a right to "keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626, 128 S.Ct. 2783. He cautioned that the opinion should not be read to "cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill," among other limitations. *Id.* at 626–27, 128 S.Ct. 2783. Those regulations, *Heller* said, are "presumptively lawful." *Id.* at 627 n.26, 128 S.Ct. 2783.

After *Heller*, the Fifth Circuit "adopted a two-step inquiry for analyzing laws that might impact the Second Amendment." *Hollis v. Lynch*, 827 F.3d 436, 446 (5th Cir. 2016). It first considered "whether the challenged law impinges upon a right protected by the Second Amendment." *Id.* (quoting *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 194 (5th Cir. 2012)). If it did, the court would then proceed to the second "means-end scrutiny" step, during which we determined "whether to apply intermediate or strict scrutiny," and then applied the appropriate scrutiny to the challenged law. *Id.*; *see also Nat'l Rifle Ass'n*, 700 F.3d at 195.

In 2022, the Supreme Court revisited and refined *Heller* in *Bruen.* There, the Court extended *Heller*'s protection for carrying handguns in the home to carrying

them publicly. 597 U.S. at 8–9, 142 S.Ct. 2111. In so doing, the Court rejected the second step of the two-step framework that had developed after *Heller*. *Id.* at 19, 142 S.Ct. 2111 ("Despite the popularity of this two-step approach, it is one step too many."). "Step one," the Court wrote, "is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history." *Id.* However, instead of moving on to means-ends scrutiny, the Court held that, when step one's requirements are met, the Constitution presumptively protects that conduct. *Id.* at 17, 142 S.Ct. 2111.

The burden then shifts to the government to "demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* This involves addressing "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 29, 142 S.Ct. 2111. The Court held that the plain text of the Second Amendment protects the right to bear arms in public for self-defense, and that the government had failed to "identify an American tradition" justifying the regulation of such behavior. *Id.* at 38–39, 142 S.Ct. 2111. The challenged New York law thus violated the Second Amendment.

Section 922(g)(1), under which Mr. Frazier was indicted, makes it unlawful for any person "who has been convicted in any court of[ ] a crime punishable by imprisonment for a term exceeding one year" to "possess ... any firearm or

ammunition ... which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1); *see also id.* § 3156(a)(3) (defining "felony" as "an offense punishable by a maximum term of imprisonment of more than one year").

To preclude Frazier from possessing firearms, the Government must show that § 922(g)(1), as applied to him, "is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19, 142 S.Ct. 2111. Historical tradition can be established by analogical reasoning, which "requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin.*" *Id.* at 30, 142 S.Ct. 2111. To be compatible with the Second Amendment, modern laws must be " 'relevantly similar' to laws that our tradition is understood to permit." *Rahimi*, 144 S. Ct. at 1898 (quoting *Bruen*, 597 U.S. at 29, 142 S.Ct. 2111). "Why and how the regulation burdens the right are central to this inquiry." *Id.*

In attempting to carry its burden, the Government relies on the Supreme Court's statement in *Heller* that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." 554 U.S. at 626, 128 S.Ct. 2783. A plurality of the Court reiterated that point in *McDonald v. City of Chicago*, 561 U.S. 742, 786, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010). In his

concurring opinion in *Bruen*, Justice Kavanaugh, joined by the Chief Justice, wrote that felon-in-possession prohibitions are "presumptively lawful" under *Heller* and *McDonald.* 597 U.S. at 81, 142 S.Ct. 2111 (quoting *Heller*, 554 U.S. at 626–27 & n.26, 128 S.Ct. 2783).

Section 922(g)(1) is a straightforward "prohibition[ ] on the possession of firearms by felons." *Heller*, 554 U.S. at 626, 128 S.Ct. 2783. Since 1961 "federal law has generally prohibited individuals convicted of crimes punishable by more than one year of imprisonment from possessing firearms." *See* An Act To Strengthen The Federal Firearms Act, Pub. L. No. 87-342, 75 Stat. 757 (1961). The Federal Firearms Act of 1938, applied only to *violent* criminals. Pub. L. No. 75-785, §§ 1(6), 2(f), 52 Stat. 1250, 1250–51 (1938). As the First Circuit explained: "the current federal felony firearm ban differs considerably from the [original] version .... [T]he law initially covered those convicted of a limited set of violent crimes such as murder, rape, kidnapping, and burglary, but extended to both felons and misdemeanants convicted of qualifying offenses." *United States v. Booker*, 644 F.3d 12, 24 (1st Cir. 2011); *see also United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc).

Recent Fifth Circuit decisions demonstrate significant disagreement about which historical analogues suffice for different predicate offenses. In *United States*

*v. Mitchell,* the Fifth Circuit held that the felon-in-possession statute violated the Second Amendment as applied to a defendant whose predicate offense was possession of a firearm while an unlawful user of a controlled substance, finding that "founding era 'going armed' laws were not relevant historical analogues" and "founding-era law punishing theft recidivism by death were not relevant historical analogues." *United States v. Mitchell*, 160 F.4th 169 (2025). Similarly, in *United States v. Cockerham,* the court emphasized that as-applied challenges focus "on the nature of the predicate offense rather than on the defendant's broader criminal history or individual characteristics" *United States v. Cockerham*, 162 F.4th 500 (2025).

There is no binding precedent from the Fifth Circuit that § 922(g)(1) is constitutional under the new *Bruen* framework. Post-*Bruen*, the Fifth Circuit has not yet decided the constitutionality of § 922(g)(1), although it has considered two other subsections of § 922(g). *See Rahimi*, 61 F.4th at 448, 460–61 (holding § 922(g)(8) is unconstitutional on its face); *United States v. Daniels*, 77 F.4th at 343, 355 (5th Cir. 2023) (holding § 922(g)(3) is unconstitutional as applied to the defendant). "[N]o circuit has granted a facial challenge" to § 922(g)(1) under *Bruen*, "though they have split on as-applied challenges." *United States v. Fulwiler*, No. 23-30152, 2023 WL 7118748, at 1 (5th Cir. Oct. 27, 2023) (unpublished) (per curiam) (collecting cases).

In his Motion to Dismiss the Indictment, Frazier challenges the validity of Section 922(g)(1) on two grounds: the plain text of the Second Amendment and the Commerce Clause. See Record Document 35 at 1.

Frazier argues that Section 922(g)(1) is unconstitutional as applied to him. See Record Document 35 at 5. He contends that the Government cannot meet its burden of establishing that Section 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation. See id. at 4. In response, the Government argues that felons such as Frazier can be dispossessed of firearms. See Rec.Doc. 40 at 10-20.

In the instant case, Keynon Frazier has prior felony convictions from 2014 for aggravated burglary and second degree robbery from ten years before the instant offense, when he was 18 years old. In order to meet their burden that Mr. Frazier's permanent disarmament is constitutional, the government is required to show that he poses a danger. The ten-year gap between the 2014 convictions and the 2024 arrest demonstrates rehabilitation and diminished dangerousness, such that permanent disarmament is unconstitutional.

***C. Commerce Clause Argument***

Frazier submits that that Section 922(g)(1) exceeds Congress's power under the Commerce Clause, while conceding that the argument is foreclosed by the Fifth Circuit's decision in *U.S. v. Seekins*, in which the court held, "We have long held

that § 922(g) can be constitutionally applied where the 'in or affecting commerce' element is proved by showing the firearm had previously traveled across state lines without regard to the defendant's conduct." *U.S. v. Seekins* , No. 21-10556, 2022 WL 3644185, at 2 (5th Cir. Aug. 24, 2022), citing *United States v. Rawls*, 85 F.3d 240, 243 (5th Cir. 1996) (holding, in rejecting an as-applied Commerce Clause challenge to a § 922(g) conviction, that the "*evidence* [wa]s sufficient to establish a past connection between the firearm and interstate commerce" (emphasis added)).

## II. The district court erred when it denied Mr. Frazier's Rule 29 motion for acquittal challenging the sufficiency of the evidence.

### *A. Standard of Review*

Where, as here, a defendant preserved a general sufficiency-of-the-evidence challenge by moving for acquittal under rule 29 at the close of the government's case-in-chief and at the close of all of the evidence, review is *de novo*. *United States v. Myers*, 104 F.3d 76, 78 (5th Cir. 1997).

### *B. Law and Argument*

A jury's verdict will be affirmed "if a reasonable trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt." *Id.* In assessing evidentiary sufficiency, the court does "not evaluate the weight of the evidence or the credibility of the witnesses, but views the

evidence in the light most favorable to the verdict, drawing all reasonable inferences to support the verdict." *United States v. Girod*, 646 F.3d 304, 313 (5th Cir. 2011).

To convict under 18 U.S.C. § 922(g)(1), the government must prove four elements: (i) Keynon Frazier was a felon; (ii) Keynon Frazier knew he was a felon; (iii) Keynon Frazier knowingly possessed firearms and ammunition; and (iv) the firearms and ammunition traveled in interstate commerce. *Rehaif v. United States*, 139 S. Ct. 2191, 2195-96 (2019); *United States v. Huntsberry*, 956 F.3d 270, 281 (5th Cir. 2020).

### *A. The government failed to introduce sufficient evidence that Keynon Frazier possessed a firearm.*

The government argued that Keynon Frazier legally possessed one or both firearms that were recovered from the passenger side of a vehicle that Frazier was driving. Neither firearm was registered or purchased by Mr. Frazier. The owner of the firearms, Brandon George, claimed that he was the owner of both firearms, one of which he purchased and the other was purchased by his former girlfriend, and that he had stashed them temporarily under the passenger side seat while he and Mr. Frazier went to the Ants nightclub, where he was prohibited from having a firearm. Mr. Frazier testified that he did not possess the firearms and saw them when they slid out from under the passenger seat after he crashed the vehicle. Furthermore, the

government did not introduce DNA, fingerprints or gunshot residue to establish that Mr. Frazier ever handled or discharged the firearms.

The district court should have granted Mr. Frazier's Rule 29 motion to acquit following the government's failure to introduce sufficient evidence of Mr. Frazier's possession of the firearms.

### *B. The government failed to introduce sufficient evidence that the ammunition moved in interstate commerce.*

The government did not introduce *any* evidence that the ammunition Mr. Frazier was alleged to have possessed was either actually or constructively possessed by him or that the ammunition was manufactured out of state or moved in or affected interstate commerce. The district court should have granted Mr. Frazier's Rule 29 motion to acquit following the government's failure to introduce sufficient evidence that the ammunition was manufactured out of state or moved n or affected interstate commerce.

## III. The district court abused its discretion when it refused to give requested jury instruction on "mere presence."

### *A. Standard of Review*

This Court reviews a district court's refusal of a criminal defendant's tendered jury instruction under the abuse of discretion standard. *United States v. Correa-Ventura,* 6 F.3d 1070, 1076 (5th Cir.1993).

***B. Law and Argument***

The district court erred when it refused to provide a clarifying instruction, specifically requested by defense counsel, stating that the defendant's "mere presence" in the car, even as the sole occupant, or his proximity to a firearm or ammunition is not sufficient to establish constructive possession unless the government also proves knowledge of and intent to control those items.

Mr. Frazier timely submitted written proposed instructions addressing this precise issue. RecDoc.57. These proposed clarifying instructions explained that when multiple people have access to the location where contraband is found, mere presence, proximity, or even sole occupancy are not, on their own, enough to prove constructive possession; what is required is evidence showing the defendant's knowledge of and intent to control the firearm or ammunition.

During the charge conference, defense counsel reiterated the request and argued that, especially in a case like this, where the government's proof of possession rested primarily on the defendant's being the sole occupant of a crashed

vehicle in which two firearms were found on the front floorboard, failure to provide this clarifying language risked allowing the jury to convict on an impermissible basis.

The district court acknowledged considering the defense's language and even described it as "nibbl[ing] around the edges" of the issue, but expressly declined to incorporate the defendant's proposed clarifications. Instead, the court gave a standard instruction defining constructive possession as having both "the power and the intention, at a given time, to exercise dominion or control over a thing, either directly or through another person or persons," while omitting an explicit statement that mere presence or proximity, regardless of sole occupancy, is insufficient on its own for conviction.

The district court's erroneous jury instruction omission is especially significant here where the case's central dispute was whether the defendant constructively possessed the firearms found in the car, given his testimony and defense theory that the firearms belonged to his bodyguard, Brandon George. The risk of prejudice was highlighted where, as here, the government highlighted constructive possession in closing, tracking the court's definition, and argued the evidence showed possession that night. During deliberations, the jury asked about

the definition of possession, indicating potential confusion and the importance of a clarifying instruction.

Without the clarifying instruction, the jury was left to believe that the Mr. Frazier's sole occupancy of the vehicle, coupled with the presence of the weapons, was enough to satisfy the required element of possession, even absent proven knowledge or intent. Thus, the failure to provide the requested clarifying jury instruction allowed the risk that the jury convicted based on improper grounds—namely, mere presence or proximity—contrary to the defense theory and the specific facts of the case.

This Court has recognized in other cases that mere dominion over a vehicle in which a firearm is found can lead to an inference of constructive possession. *See e.g., United States v. Prudhome,* 13 F.3d 147, 149 (5th Cir.1994); *United States v. Knezek,* 964 F.2d 394, 400 (5th Cir.1992). But in those cases, we were not confronted with such overwhelming countervailing evidence. In *Prudhome,* for example, the government demonstrated not only that the defendant was driving the vehicle but also that the gun was found directly beneath him and that three rounds of matching ammunition were found in his waist pocket. *Prudhome,* 13 F.3d at 149. Likewise, in *Knezek,* the government demonstrated the defendant not only was driving the vehicle but also admitted ownership of the weapons. Thus, while

dominion over the vehicle certainly will help the government's case, it alone cannot establish constructive possession of a weapon found in the vehicle, particularly in the face of evidence that strongly suggests that somebody else exercised dominion and control over the weapon.

"The defendant 's mere presence in a car where a gun is found and proximity to a gun are insufficient proof of constructive possession." That the defendant drove and was the sole person in the car did not conclusively establish dominion and control over the gun within the car. To determine that the defendant had constructive possession over the firearm there must be additional circumstantial evidence beyond the defendant's having driven the car in which the firearm was found. " U.S.v. Bailey. 553 F.3d 940 (6 th Cir . 2009)

If a defendant "den[ies] any knowledge of a thing found in an area under his control," as Mr. Frazier does in this case, "[t] he government then must offer evidence to prove that the defendant (1) knew that the thing was present, and (2) intended to exercise dominion over it." *United States v. Jones*, 484 F.3d 783, 788 (5th Cir. 2007).

## IV. The district court erred when it denied defense requested voir dire questions about gun ownership and attitudes toward guns.

### *A. Standard of Review*

A trial judge's conduct of voir dire is reviewed for abuse of discretion. *See United States v. Rasco,* 123 F.3d 222, 231 (5th Cir.1997), *cert. denied,* 522 U.S. 1083, 118 S.Ct. 868, 139 L.Ed.2d 765 (1998). If the court finds an abuse of discretion, then it must decide whether or not it constitutes harmless error. *Compare United States v. Garcia,* 86 F.3d 394, 401 (5th Cir.1996) *with United States v. Brown,* 897 F.2d 162, 163 (5th Cir.1990).

***B. Law and Argument***

Mr. Frazier requested that the judge ask prospective jurors the following questions during voir dire:

1. Do any of you own or possess in your home or vehicle, a firearm?
2. Does anyone believe that the 2d Amendment to the U.S . Constitution provides to a person the right to possess a firearm for his or her own protection?
3. Should people be allowed to hire a bodyguard?

ROA.125.

The defense request was denied by the Court, which stated that the questions that had been requested were "substantially included in the script on the follow-up questions that the Court will use." ROA. 222. Neither the questions nor questions that were substantially similar, were asked by the court during jury selection.

Voir dire serves the critical function of ensuring an impartial jury by allowing counsel to discover biases or prejudices among prospective jurors that could affect their ability to fairly evaluate evidence and follow court instructions. Inquiry into jurors' experiences or attitudes relevant to specific elements of a case is often necessary to detect potential bias. In cases involving felon-in-possession charges or use of firearms, exploring jurors' attitudes about guns, gun ownership, and related topics can reveal prejudices that may hinder their ability to impartially weigh evidence involving firearms. Such questioning is not limited to the defendant's specific defense theory but aims to assess juror impartiality toward evidence central to the prosecution, such as the firearm itself. Without the ability to ask about gun ownership or attitudes toward firearms during voir dire, counsel may be unable to adequately challenge biased jurors for cause or exercise peremptory strikes effectively, thus compromising the defendant's right to a fair trial with an impartial jury. Trial courts generally have discretion over voir dire, but that discretion has limits where questions are necessary to uncover biases that affect fairness. Refusal to ask relevant bias-discovery questions can be reversible error, especially when linked to core issues in the prosecution, such as gang bias or firearms-related bias.

A district court is afforded "great latitude to conduct voir dire, including the form and scope of questioning." *United States v. Pratt*, 728 F.3d 463, 470 (5th Cir.

2013), *abrogated on other grounds by Molina-Martinez v. United States*, 578 U.S. 189 (2016); *see also Darden v. Snow*, 849 F. App'x 100, 101 (5th Cir. 2021) (Trial court has "broad discretion" in how it selects a jury.). Voir dire is the district court's responsibility, *Pratt*, 728 F.3d at 472, and a court's failure to ask a proposed question does not amount to an abuse of discretion "if the overall voir dire examination and the instructions given at trial adequately protect a party's interests," *United States v. Harper*, 369 F. App'x 556, 565 (5th Cir. 2010) (district court did not abuse its discretion by denying defendant the opportunity to submit his proposed questionnaire to jurors); *see also United States v. Flores*, 63 F.3d 1342, 1353 (5th Cir. 1995) (district court did not abuse its discretion by refusing to permit a long questionnaire to be sent to potential jurors); United States v. Claus, CR 24-155, 2025 WL 2735541, at 1 (E.D. La. Sept. 25, 2025)

A district court's failure to ask a proposed question does not constitute an abuse of discretion if the overall voir dire examination and the instructions given at trial adequately protect a party's interests. *United States v. Harper,* 527 F.3d 396, 409–10 (5th Cir.2008); *United States v. Williams,* 573 F.2d 284, 287 (5th Cir.1978). The proper test is whether the district court's "inquiry reasonably assured that any bias or prejudice against [the defendant] would have been discovered if

present." *United States v. Quiroz–Hernandez,* 48 F.3d 858, 869 (5th Cir.1995); *United States v. Harper*, 369 Fed.Appx. 556, 565 (5th Cir.2010).

In the instant case, the district court's voir dire was perfunctory and failed to investigate potential bias about firearms or bodyguards, as the trial court insisted it would. Given the defendant's right to an impartial jury, the reasonableness of the requested voir dire questions, and the trial court's unrealized assurance that the ground would be covered in its questions, the trial court abused its discretion.

## V. The district court clearly erred when it applied a 2-level sentencing enhancement for obstruction of justice under USSG § 3C1.1.

### *A. Standard of Review*

For preserved challenges, this court "review[s] the district court's interpretation of the Sentencing Guidelines de novo and its findings of fact for clear error." *United States v. Aderinoye*, 33 F.4th 751, 754 (5th Cir. 2022).

### *B. Law and Argument*

U.S. Probation improperly calculated a 2-point enhancement for Obstruction of Justice based on a jail call made by Keynon Frazier following his arrest. ROA. 897. In *Guidry*, this Court reaffirmed that "although the guidelines are advisory post-*Booker*, [the Court] must ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the

[g]uidelines range." *United States v. Guidry*, 960 F.3d 676, 681 (5th Cir.2020) citing *United States v. Richardson*, 676 F.3d 491, 508 (5th Cir. 2012) (quotation marks omitted). "When a defendant is sentenced under an incorrect [g]uidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345, 194 L.Ed.2d 444 (2016).

The sentencing guidelines provide for a two-level enhancement where "(1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense." U.S.S.G. § 3C1.1. The commentary to that provision provides that it applies to "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." *Id.* cmt. n.4(A). But where efforts to destroy or conceal evidence occur "contemporaneously with arrest," the enhancement does not apply unless the defendant's conduct "result[ed] in a material hindrance to the official investigation

or prosecution of the instant offense or the sentencing of the offender." *Id.* cmt. n.4(D).

The jail call cited by the PSR as evidence of obstruction occurred shortly after Keynon Frazier's arrest. The testimony referred repeatedly to the free phone call that is afforded an arrestee after he is booked. ROA.398. Contrary to the PSR's characterization that this conversation reflected Frazier's "coercion" of a witness, Brandon George, ("BG") according to the testimony of multiple officers, had already informed law enforcement *at the scene* that he owned the firearms attributed to Keynon Frazier. Frazier's statement on the jail call is not coercive or threatening, and based on its timing shortly after his arrest but *after* BG had already claimed ownership of the firearms, did not create a "material hindrance to the official investigation." The trial court clearly erred when it applied a 2 level enhancement for obstruction of justice based on the contemporaneous jail call that merely reiterated that BG, who had already claimed ownership of the firearms, should do so.

## VI. The district court clearly erred when it applied a 2-level sentencing enhancement for obstruction of justice under USSG §3C1.2.

### *A. Standard of Review*

For preserved challenges, this court "review[s] the district court's interpretation of the Sentencing Guidelines de novo and its findings of fact for clear error." *United States v. Aderinoye*, 33 F.4th 751, 754 (5th Cir. 2022). Under the clear-error standard of review, we uphold a sentencing court's factual findings "if they are plausible in light of the record as a whole, and they will be deemed clearly erroneous only if a review of all the evidence leaves this court with the definite and firm conviction that a mistake has been committed." *United States v. Torres-Magana*, 938 F.3d 213, 216 (5th Cir. 2019) (quoting *United States v. Richard*, 901 F.3d 514, 516 (5th Cir. 2018)).

***B. Law and Argument***

Pursuant to U.S.S.G. § 3C1.2, "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer," the district court may increase the offense level by two. "In order to establish that the defendant's sentence should be enhanced under § 3C1.2, the government must show that the defendant (1) recklessly, (2) created a substantial risk of death or serious bodily injury, (3) to another person, (4) in the course of fleeing from a law enforcement officer, (5) and that this conduct occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that

offense." *United States v. Southerland,* 405 F.3d 263, 268 (5th Cir.2005) (emphasis and internal quotation marks omitted).

Frazier and Brandon George testified that they left Ants nightclub in a hurry because they perceived a threat. Corporal Jackson testified that he was standing outside in the parking lot at Ants nightclub when he observed the Chrysler pass him at a high rate of speed, without its tail lights illuminated. ROA.313. Although it is not clear how close Corporal Jackson got to Frazier, because his body camera was not turned on and Corporal Jackson testified that he did not observe the other two vehicles following the Chrysler in a convoy or see the Chrysler crash into the utility pole. ROA.315.

Based on Corporal Jackson's testimony it is not evident that Keynon Frazier, who acknowledged that he was driving at a high rate of speed before he crashed, was aware of the police presence until after he crashed.

Obstruction of justice enhancement under this statute requires that the defendant be in the act of flight. There was no evidence that rather than driving fast and leaving Ants nightclub in a hurry, Frazier was in fact fleeing from law enforcement when he lost control of his vehicle. The trial court erred when it imposed this 2 level enhancement.

## CONCLUSION

WHEREFORE, Mr. Frazier respectfully requests that this Court reverse his conviction, vacate his sentence, and remand for dismissal of the indictment or, at minimum, for a new trial and resentencing.

Respectfully submitted,

/s/ *Rachel I. Conner*

RACHEL I. CONNER, La. Bar No. 29726
Law Office of Rachel I. Conner
3015 Magazine Street
New Orleans, LA 70130
(504) 581-9083
rachel@connerdefense.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 11th day of February, 2026, a copy of the foregoing Brief on Appeal was mailed, first-class postage prepaid, to Mr. Keynon Frazier, Reg. No. 13119-509, FCI Three Rivers, US HIGHWAY 72 WEST THREE RIVERS, TX 78071.

A copy of the foregoing brief was filed with the Clerk of Court via the electronic filing system, which will send an electronic Notice of Docket Activity to the following Filing Users:

(1) AUSA Camille Domingue <camille.domingue@usdoj.gov>

"Service may be . . . by mail," FED. R.APP. P. 25(c)(1)(B), and "[t]he court's electronic Notice of Docket Activity constitutes service of the filed document on all Filing Users," 5TH CIR.R.25.2.5.

/s/ Rachel I. Conner
Rachel I. Conner, La. Bar No. 29726
Dated: February 11, 2026

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that:

1. This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 8427 words, excluding the parts of the brief exempted by FED. R.APP. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of FED. R.APP. P. 32(a)(5) and 5TH CIR. R.32.1 and the type style requirements of FED. R.APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman, 14-point font for text and 12-point font for footnotes.

3. This brief complies with the privacy redaction requirement of FED. R.APP. P. 25(a)(5), 5TH CIR.R.25.2.13, and FED. R.CRIM. P. 49.1, because it has been redacted of personal data identifiers.

4. This electronic submission is an exact copy of the paper document, in compliance with 5TH CIR.R.25.2.1.

5. This brief is free of viruses because it has been scanned for viruses with the most recent version of Microsoft Security Essentials, in compliance with 5TH CIR.ECF FILING STANDARD A(6).

/s/ Rachel I. Conner
Rachel I. Conner, La. Bar No. 29726
Dated: February 11, 2026